## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN DOE,

                              Plaintiff,

              v.

HEUBACH LTD;
HEUBACH, LTD., A NJ LIMITED
PARTNERSHIP; and
HEUBACH COLOR TECHNOLOGY INC.,

                              Defendants.

Case No. __23-1347__

## **COMPLAINT**

## **PARTIES**

1.      Plaintiff, John Doe, age 37, is an adult individual and current resident of the Commonwealth of Pennsylvania, who currently resides in Bucks County, Pennsylvania, at ███ ████████████████████ Plaintiff's name and address have been removed from the Complaint.  Plaintiff has filed a Motion to Proceed Anonymously, and Memorandum of Law in support thereof, on this same date.

2.      Defendant, Heubach LTD, was, at all times relevant hereto, a New Jersey limited partnership, and the Plaintiff's employer, with a principal place of business located at 99 Newbold Road, Fairless Hills, Pennsylvania 19030.

3.      Defendant, Heubach, Ltd., a NJ Limited Partnership, was, at all times relevant hereto, a New Jersey limited partnership, and the Plaintiff's employer, with a principal place of business located at 99 Newbold Road, Fairless Hills, Pennsylvania 19030.

4. Defendant, Heubach Color Technology Inc., was, at all times relevant hereto, a New Jersey limited partnership, and the Plaintiff's employer, with a principal place of business located at 99 Newbold Road, Fairless Hills, Pennsylvania 19030.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

6. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state-law claims as those claims arise out of the same set of operative facts as the federal claims.

7. This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Company v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

8. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because Defendants reside in and/or conduct business in this judicial district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

9. At all times relevant hereto, Defendants each employed fifteen (15) or more persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

10. Plaintiff has exhausted administrative remedies and Plaintiff's EEOC Notice of Right-to-Sue is attached hereto as Exhibit "A."

### CLAIMS FOR RELIEF

### COUNT I:
### WRONGFUL TERMINATION BASED ON PERCEIVED SEXUAL ORIENTATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e, et seq.* (Plaintiff, John Doe v. Defendants, Heubach LTD; Heubach, Ltd., A NJ Limited Partnership; and Heubach Color Technology Inc.)

11.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

12.     Plaintiff was employed by Defendants, beginning February 24, 2020, as the Defendants' Director of Technology, at a salary most recently of one-hundred and eight thousand dollars ($108,000.00).

13.     Plaintiff was wrongfully terminated by Defendants on account of his perceived or assumed sexual orientation.  Plaintiff was wrongfully terminated by Defendants on account of the fact that he was perceived or assumed to be gay and/or based on gender stereotypes.

14.     Plaintiff experienced a hostile and abusive atmosphere while employed with Defendants based on the fact that Plaintiff was perceived or assumed to be gay and/or based on gender stereotypes.

15.     During Plaintiff's employment, Plaintiff was repeatedly questioned about whether or not he was married or had a girlfriend, meaning whether or not Plaintiff was associated with a partner of the opposite sex, female.  For example, Plaintiff recollects that he was questioned in this manner by Mr. Alexander Monteverde, Environmental Health and Safety ("EHS") Manager; Mr. Roman Yanush, Programmer; Mr. Shawn Ivone, manufacturing plant employee; and Mr. Mickey Shea, manufacturing plant employee.  Plaintiff recollects on one occasion that he responded, for example, that it was "none of your concern," or words to that effect.  Plaintiff was

perceived or assumed to be gay by Defendants' employees, or that Plaintiff associated with members of the same sex, male.  However, Plaintiff is not gay.

16.     On April 9, 2020, Mr. Alexander Monteverde, Environmental Health and Safety ("EHS") Manager, who, at all times relevant hereto, had supervisory authority, sent a chat to Plaintiff through the company's Microsoft Outlook program, stating, **"[W]ell you're a faggot so."**  After receiving the message, Plaintiff took a screenshot of the message.  Plaintiff did not respond to the message.  The message was subjectively and objectively offensive to Plaintiff and to a reasonable person.  The message referring to Plaintiff as a "faggot" (hereinafter "faggot" or "f----t") is attached hereto as Exhibit "B."  The message attached hereto as Exhibit "B" constitutes direct and/or circumstantial evidence of discrimination against Plaintiff by the Defendants.

17.     After Plaintiff received the message from Mr. Monteverde referring to Plaintiff as a "f----t," attached as Exhibit "B" hereto, Plaintiff reported harassment to Don McBride, Chief Operating Officer, on or about April 9, 2020 or the following day, April 10, 2020.

18.     Mr. McBride did not take prompt and appropriate remedial action to prevent, correct, and remedy the harassment, which continued as a result.

19.     During Plaintiff's employment with Defendants, Plaintiff also recollects that his peers as well as management employees would frequently make comments such as "faggot" or "fag" (hereinafter "f-g").

20.     For example, John Michael Hester, Plant Superintendent, used the word, "f----t." Plaintiff recollects, for example, that Mr. Hester used the word, "f----t," after the date of April 9, 2020, which was when Mr. Monteverde used the word, "f----t."

21.     Mr. Hester used the word "f----t" multiple times to Plaintiff's recollection.

22.     Mr. Tom Dupras, Vice President of Disbursements, whom Plaintiff observed working with Mr. Hester, also used the word, "f----t," openly.

23.     Mr. Dupras also used the word "f-g" openly.

24.     The conduct from Mr. Monteverde, Mr. Hester, and Mr. Dupras set the example top-down at the company, such that Plaintiff recollects that multiple manufacturing plant workers also used the word, "f----t."

25.     In 2021, and to the best of Plaintiff's recollection, in or around Summer of 2021, Mr. Dupras, Vice President of Disbursements, was standing in a hallway outside of a restroom at the company, along with Mr. Bob Gray, Quality Control or Lab Manager, and Plaintiff, John Doe.  Mr. Dupras stated to the Plaintiff about Mr. Gray, "I saw him sucking your dick," or words to that effect.

26.     Plaintiff was subjected to tangible employment action by being unlawfully terminated, on February 24, 2022, on account of discrimination.

27.     Doe's termination was because of his perceived sexual orientation and/or gender stereotypes.  *See Bostock v. Clayton Cnty., Ga.*, Consolidated Case No. 17-1618, 590 U.S. ____, 140 S. Ct. 1731, 2020 WL 3146686 (U.S. June 15, 2020).

28.     The fact that Doe was perceived or assumed to be gay was a motivating factor in Doe's discharge.

29.     Plaintiff was terminated based on a false pretext, and at all times relevant hereto, Defendants attempted to set Plaintiff up for termination based on the fact that he was perceived or assumed to be gay and/or based on gender stereotypes.  It was communicated by Defendants to Plaintiff that he was being terminated for allegedly failing to perform a service on an employee's personal computer at their home, and instead asking Mr. Roman Yanush,

Programmer, to perform the same in an attempt to delegate the request.  Plaintiff was terminated based on a pretext while multiple other similarly-situated comparator employees, outside of the pertinent protected class, regularly delegated similar tasks, and were not disciplined, let alone terminated.

30.     It is believed and therefore averred that the following similarly-situated comparator employees, outside of the pertinent protected class, were not subjected to discriminatory treatment like Plaintiff, to wit:

    a.      It is believed and therefore averred that Mr. Tom Dupras, who was not perceived or assumed to be gay, delegated tasks, including, for example, sending an employee into the plant to go up on a deck, or ordering an employee to perform a task, and Mr. Dupras was not disciplined or terminated.

    b.      It is believed and therefore averred that Mr. Alexander Monteverde, who was not perceived or assumed to be gay, delegated tasks, and Mr. Monteverde was not disciplined or terminated.

    c.      It is believed and therefore averred that Mr. John Michael Hester, who was not perceived or assumed to be gay, delegated tasks, and Mr. Hester was not disciplined or terminated.

    d.      It is believed and therefore averred that Mr. Bob Gray, who was not perceived or assumed to be gay, delegated tasks, and Mr. Gray was not disciplined or terminated.

e.    It is believed and therefore averred that Ms. June Dickinson, who was not perceived or assumed to be gay, delegated tasks, and Ms. Dickinson was not disciplined or terminated.

f.    It is believed and therefore averred that Ms. Jen Ensign (sp.), who was not perceived or assumed to be gay, delegated tasks, and Ms. Ensign (sp.) was not disciplined or terminated.

g.    It is believed and therefore averred that Mr. Walter Reicher, who was not perceived or assumed to be gay, delegated tasks, and Mr. Reicher was not disciplined or terminated.

h.    In addition, after Mr. Roman Yanush, Programmer, was asked to perform the service on an employee's personal computer at their home, on the purported date in question, Mr. Yanush stated that he was not going to do it, or words to that effect.  Mr. Yanush, however, was not disciplined or terminated.  Mr. Yanush was not perceived or assumed to be gay.

31.    Doe suffered past and future lost wages and lost earning capacity on account of Defendants' discriminatory acts against Doe in violation of Title VII.

32.    Doe suffered compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and severe emotional distress, on account of the Defendants' discriminatory acts against Doe in violation of Title VII.

33.    Defendants' conduct toward Doe was in reckless disregard for Doe's protected rights and Defendants are liable to Doe for punitive damages to deter Defendants and future employers from similar misconduct in the future.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBT sensitivity training for any and all employees; to provide a neutral employment reference for Doe; and for Defendants to provide an apology to Doe.

**COUNT II:**
**WRONGFUL TERMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, John Doe v. Defendants, Heubach LTD; Heubach, Ltd., A NJ Limited Partnership; and Heubach Color Technology Inc.)**

34.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

35.     Defendants wrongfully terminated Plaintiff on February 24, 2022 on account of discrimination, due to the fact that Plaintiff was perceived or assumed to be gay, and/or based on gender stereotypes.

36.     Doe's termination was because of his sex and/or gender stereotypes.

37.     Doe's sex was a motivating factor in Doe's discharge.

38.     Plaintiff was terminated based on a false pretext, and at all times relevant hereto, Defendants attempted to set Plaintiff up for termination based on the fact that he was perceived or assumed to be gay and/or based on gender stereotypes.  It was communicated by Defendants to Plaintiff that he was being terminated for allegedly failing to perform a service on an

employee's personal computer at their home, and instead asking Mr. Roman Yanush, Programmer, to perform the same in an attempt to delegate the request.  Plaintiff was terminated based on a pretext while multiple other similarly-situated comparator employees, outside of the pertinent protected class, regularly delegated similar tasks, and were not disciplined, let alone terminated.

39.     It is believed and therefore averred that the following similarly-situated comparator employees, outside of the pertinent protected class, were not subjected to discriminatory treatment like Plaintiff, to wit:

a.     It is believed and therefore averred that Mr. Tom Dupras, who was not perceived or assumed to be gay, delegated tasks, including, for example, sending an employee into the plant to go up on a deck, or ordering an employee to perform a task, and Mr. Dupras was not disciplined or terminated.

b.     It is believed and therefore averred that Mr. Alexander Monteverde, who was not perceived or assumed to be gay, delegated tasks, and Mr. Monteverde was not disciplined or terminated.

c.     It is believed and therefore averred that Mr. John Michael Hester, who was not perceived or assumed to be gay, delegated tasks, and Mr. Hester was not disciplined or terminated.

d.     It is believed and therefore averred that Mr. Bob Gray, who was not perceived or assumed to be gay, delegated tasks, and Mr. Gray was not disciplined or terminated.

e.   It is believed and therefore averred that Ms. June Dickinson, who was not perceived or assumed to be gay, delegated tasks, and Ms. Dickinson was not disciplined or terminated.

f.   It is believed and therefore averred that Ms. Jen Ensign (sp.), who was not perceived or assumed to be gay, delegated tasks, and Ms. Ensign (sp.) was not disciplined or terminated.

g.   It is believed and therefore averred that Mr. Walter Reicher, who was not perceived or assumed to be gay, delegated tasks, and Mr. Reicher was not disciplined or terminated.

h.   In addition, after Mr. Roman Yanush, Programmer, was asked to perform the service on an employee's personal computer at their home, on the purported date in question, Mr. Yanush stated that he was not going to do it, or words to that effect.  Mr. Yanush, however, was not disciplined or terminated.  Mr. Yanush was not perceived or assumed to be gay.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBT sensitivity training for any and all employees; to provide a neutral employment reference for Doe; and for Defendants to provide an apology to Doe.

**COUNT III:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON PERCEIVED SEXUAL**
**ORIENTATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42**
**U.S.C. § 2000*e*, et seq.**
**(Plaintiff, John Doe v. Defendants, Heubach LTD; Heubach, Ltd., A NJ Limited**
**Partnership; and Heubach Color Technology Inc.)**

40.     All of the foregoing paragraphs are hereby incorporated as if the same were more

fully set forth herein at length.

41.     Plaintiff experienced a hostile and abusive atmosphere while employed with

Defendants based on the fact that Plaintiff was perceived or assumed to be gay and/or based on

gender stereotypes.

42.     During Plaintiff's employment, Plaintiff was repeatedly questioned about whether

or not he was married or had a girlfriend, meaning whether or not Plaintiff was associated with a

partner of the opposite sex, female.  For example, Plaintiff recollects that he was questioned in

this manner by Mr. Alexander Monteverde, Environmental Health and Safety ("EHS") Manager;

Mr. Roman Yanush, Programmer; Mr. Shawn Ivone, manufacturing plant employee; and Mr.

Mickey Shea, manufacturing plant employee.  Plaintiff recollects on one occasion that he

responded, for example, that it was "none of your concern," or words to that effect.  Plaintiff was

perceived or assumed to be gay by Defendants' employees, or that Plaintiff associated with

members of the same sex, male.  However, Plaintiff is not gay.

43.     On April 9, 2020, Mr. Alexander Monteverde, Environmental Health and Safety

("EHS") Manager, who, at all times relevant hereto, had supervisory authority, sent a chat to

Plaintiff through the company's Microsoft Outlook program, stating, **"[W]ell you're a faggot**

**so."**  After receiving the message, Plaintiff took a screenshot of the message.  Plaintiff did not

respond to the message.  The message was subjectively and objectively offensive to Plaintiff and

to a reasonable person.  The message referring to Plaintiff as a "faggot" (hereinafter "faggot" or

"f----t") is attached hereto as Exhibit "B."  The message attached hereto as Exhibit "B"

constitutes direct and/or circumstantial evidence of discrimination against Plaintiff by the

Defendants.

44.     After Plaintiff received the message from Mr. Monteverde referring to Plaintiff as

a "f----t," attached as Exhibit "B" hereto, Plaintiff reported harassment to Don McBride, Chief

Operating Officer, on or about April 9, 2020 or the following day, April 10, 2020.

45.     Mr. McBride did not take prompt and appropriate remedial action to prevent,

correct, and remedy the harassment, which continued as a result.

46.     During Plaintiff's employment with Defendants, Plaintiff also recollects that his

peers as well as management employees would frequently make comments such as "faggot" or

"fag" (hereinafter "f-g").

47.     For example, John Michael Hester, Plant Superintendent, used the word, "f----t."

Plaintiff recollects, for example, that Mr. Hester used the word, "f----t," after the date of April 9,

2020, which was when Mr. Monteverde used the word, "f----t."

48.     Mr. Hester used the word "f----t" multiple times to Plaintiff's recollection.

49.     Mr. Tom Dupras, Vice President of Disbursements, whom Plaintiff observed

working with Mr. Hester, also used the word, "f----t," openly.

50.     Mr. Dupras also used the word "f-g" openly.

51.     The conduct from Mr. Monteverde, Mr. Hester, and Mr. Dupras set the example

top-down at the company, such that Plaintiff recollects that multiple manufacturing plant

workers also used the word, "f----t."

52.     In 2021, and to the best of Plaintiff's recollection, in or around Summer of 2021,

Mr. Dupras, Vice President of Disbursements, was standing in a hallway outside of a restroom at

the company, along with Mr. Bob Gray, Quality Control or Lab Manager, and Plaintiff, John

Doe.  Mr. Dupras stated to the Plaintiff about Mr. Gray, "I saw him sucking your dick," or words

to that effect.

53.     Plaintiff was subjected to tangible employment action by being unlawfully

terminated, on February 24, 2022.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against

Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate

Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and

promotions Plaintiff would have received; compensatory damages for pain and suffering, mental

anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive

damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and

equitable/injunctive relief requiring Defendants to conduct LGBT sensitivity training for any and

all employees; to provide a neutral employment reference for Doe; and for Defendants to provide

an apology to Doe.

### COUNT IV:
### HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, <u>et seq.</u> (Plaintiff, John Doe v. Defendants, Heubach LTD; Heubach, Ltd., A NJ Limited <u>Partnership; and Heubach Color Technology Inc.)</u>

54.     All of the foregoing paragraphs are hereby incorporated as if the same were more

fully set forth herein at length.

55.     Plaintiff experienced a hostile and abusive atmosphere while employed with

Defendants based on the fact that Plaintiff was perceived or assumed to be gay and/or based on

gender stereotypes.

56.     During Plaintiff's employment, Plaintiff was repeatedly questioned about whether or not he was married or had a girlfriend, meaning whether or not Plaintiff was associated with a partner of the opposite sex, female.  For example, Plaintiff recollects that he was questioned in this manner by Mr. Alexander Monteverde, Environmental Health and Safety ("EHS") Manager; Mr. Roman Yanush, Programmer; Mr. Shawn Ivone, manufacturing plant employee; and Mr. Mickey Shea, manufacturing plant employee.  Plaintiff recollects on one occasion that he responded, for example, that it was "none of your concern," or words to that effect.  Plaintiff was perceived or assumed to be gay by Defendants' employees, or that Plaintiff associated with members of the same sex, male.  However, Plaintiff is not gay.

57.     On April 9, 2020, Mr. Alexander Monteverde, Environmental Health and Safety ("EHS") Manager, who, at all times relevant hereto, had supervisory authority, sent a chat to Plaintiff through the company's Microsoft Outlook program, stating, **"[W]ell you're a faggot so."**  After receiving the message, Plaintiff took a screenshot of the message.  Plaintiff did not respond to the message.  The message was subjectively and objectively offensive to Plaintiff and to a reasonable person.  The message referring to Plaintiff as a "faggot" (hereinafter "faggot" or "f----t") is attached hereto as Exhibit "B."  The message attached hereto as Exhibit "B" constitutes direct and/or circumstantial evidence of discrimination against Plaintiff by the Defendants.

58.     After Plaintiff received the message from Mr. Monteverde referring to Plaintiff as a "f----t," attached as Exhibit "B" hereto, Plaintiff reported harassment to Don McBride, Chief Operating Officer, on or about April 9, 2020 or the following day, April 10, 2020.

59.     Mr. McBride did not take prompt and appropriate remedial action to prevent, correct, and remedy the harassment, which continued as a result.

60.     During Plaintiff's employment with Defendants, Plaintiff also recollects that his peers as well as management employees would frequently make comments such as "faggot" or "fag" (hereinafter "f-g").

61.     For example, John Michael Hester, Plant Superintendent, used the word, "f----t." Plaintiff recollects, for example, that Mr. Hester used the word, "f----t," after the date of April 9, 2020, which was when Mr. Monteverde used the word, "f----t."

62.     Mr. Hester used the word "f---t" multiple times to Plaintiff's recollection.

63.     Mr. Tom Dupras, Vice President of Disbursements, whom Plaintiff observed working with Mr. Hester, also used the word, "f----t," openly.

64.     Mr. Dupras also used the word "f-g" openly.

65.     The conduct from Mr. Monteverde, Mr. Hester, and Mr. Dupras set the example top-down at the company, such that Plaintiff recollects that multiple manufacturing plant workers also used the word, "f----t."

66.     In 2021, and to the best of Plaintiff's recollection, in or around Summer of 2021, Mr. Dupras, Vice President of Disbursements, was standing in a hallway outside of a restroom at the company, along with Mr. Bob Gray, Quality Control or Lab Manager, and Plaintiff, John Doe.  Mr. Dupras stated to the Plaintiff about Mr. Gray, "I saw him sucking your dick," or words to that effect.

67.     Plaintiff was subjected to tangible employment action by being unlawfully terminated, on February 24, 2022.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and

promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBT sensitivity training for any and all employees; to provide a neutral employment reference for Doe; and for Defendants to provide an apology to Doe.

**COUNT V:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, John Doe v. Defendants, Heubach LTD; Heubach, Ltd., A NJ Limited Partnership; and Heubach Color Technology Inc.)**

68.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

69.     Plaintiff experienced a hostile and abusive atmosphere while employed with Defendants based on the fact that Plaintiff was perceived or assumed to be gay and/or based on gender stereotypes.

70.     On April 9, 2020, Mr. Alexander Monteverde, Environmental Health and Safety ("EHS") Manager, who, at all times relevant hereto, had supervisory authority, sent a chat to Plaintiff through the company's Microsoft Outlook program, stating, **"[W]ell you're a faggot so."**  After receiving the message, Plaintiff took a screenshot of the message.  Plaintiff did not respond to the message.  The message was subjectively and objectively offensive to Plaintiff and to a reasonable person.  The message referring to Plaintiff as a "faggot" (hereinafter "faggot" or "f----t") is attached hereto as Exhibit "B."  The message attached hereto as Exhibit "B" constitutes direct and/or circumstantial evidence of discrimination against Plaintiff by the Defendants.

71.     After Plaintiff received the message from Mr. Monteverde referring to Plaintiff as a "f----t," attached as Exhibit "B" hereto, Plaintiff reported harassment to Don McBride, Chief Operating Officer, on or about April 9, 2020 or the following day, April 10, 2020.

72.     Mr. McBride did not take prompt and appropriate remedial action to prevent, correct, and remedy the harassment, which continued as a result.

73.     During Plaintiff's employment with Defendants, Plaintiff also recollects that his peers as well as management employees would frequently make comments such as "faggot" or "fag" (hereinafter "f-g").

74.     For example, John Michael Hester, Plant Superintendent, used the word, "f----t." Plaintiff recollects, for example, that Mr. Hester used the word, "f----t," after the date of April 9, 2020, which was when Mr. Monteverde used the word, "f----t."

75.     Mr. Hester used the word "f----t" multiple times to Plaintiff's recollection.

76.     Mr. Tom Dupras, Vice President of Disbursements, whom Plaintiff observed working with Mr. Hester, also used the word, "f----t," openly.

77.     Mr. Dupras also used the word "f-g" openly.

78.     The conduct from Mr. Monteverde, Mr. Hester, and Mr. Dupras set the example top-down at the company, such that Plaintiff recollects that multiple manufacturing plant workers also used the word, "f----t."

79.     In 2021, and to the best of Plaintiff's recollection, in or around Summer of 2021, Mr. Dupras, Vice President of Disbursements, was standing in a hallway outside of a restroom at the company, along with Mr. Bob Gray, Quality Control or Lab Manager, and Plaintiff, John Doe.  Mr. Dupras stated to the Plaintiff about Mr. Gray, "I saw him sucking your dick," or words to that effect.

80.     Plaintiff was terminated on February 24, 2022 on account of retaliation for his protected conduct or activity.

81.     Plaintiff was terminated based on a false pretext, and at all times relevant hereto, Defendants attempted to set Plaintiff up for termination.  It was communicated by Defendants to Plaintiff that he was being terminated for allegedly failing to perform a service on an employee's personal computer at their home, and instead asking Mr. Roman Yanush, Programmer, to perform the same in an attempt to delegate the request.  Plaintiff was terminated based on a pretext while multiple other similarly-situated comparator employees, outside of the pertinent protected class and who did not engage in protected conduct or activity, regularly delegated similar tasks, and were not disciplined, let alone terminated, including but not limited to the following individuals, to wit.

a.     For example, it is believed and therefore averred that Mr. Tom Dupras, who was not perceived or assumed to be gay and who did not engage in protected conduct or activity, delegated tasks, including, for example, sending an employee into the plant to go up on a deck, or ordering an employee to perform a task, and Mr. Dupras was not disciplined or terminated.

b.     It is believed and therefore averred that Mr. Alexander Monteverde, who was not perceived or assumed to be gay and who did not engage in protected conduct or activity, delegated tasks, and Mr. Monteverde was not disciplined or terminated.

c.     It is believed and therefore averred that Mr. John Michael Hester, who was not perceived or assumed to be gay and who did not engage in protected

conduct or activity, delegated tasks, and Mr. Hester was not disciplined or terminated.

d.      It is believed and therefore averred that Mr. Bob Gray, who was not perceived or assumed to be gay and who did not engage in protected conduct or activity, delegated tasks, and Mr. Gray was not disciplined or terminated.

e.      It is believed and therefore averred that Ms. June Dickinson, who was not perceived or assumed to be gay and who did not engage in protected conduct or activity, delegated tasks, and Ms. Dickinson was not disciplined or terminated.

f.      It is believed and therefore averred that Ms. Jen Ensign (sp.), who was not perceived or assumed to be gay and who did not engage in protected conduct or activity, delegated tasks, and Ms. Ensign (sp.) was not disciplined or terminated.

g.      It is believed and therefore averred that Mr. Walter Reicher, who was not perceived or assumed to be gay and who did not engage in protected conduct or activity, delegated tasks, and Mr. Reicher was not disciplined or terminated.

h.      In addition, after Mr. Roman Yanush, Programmer, was asked to perform the service on an employee's personal computer at their home, on the purported date in question, Mr. Yanush stated that he was not going to do it, or words to that effect.  Mr. Yanush, however, was not disciplined or

terminated.  Mr. Yanush was not perceived or assumed to be gay and is not believed to have engaged in protected conduct or activity.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBT sensitivity training for any and all employees; to provide a neutral employment reference for Doe; and for Defendants to provide an apology to Doe.

### COUNT VI:
### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, <u>et seq.</u>
### (Plaintiff, John Doe v. Defendants, Heubach LTD; Heubach, Ltd., A NJ Limited <u>Partnership; and Heubach Color Technology Inc.)</u>

82.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

83.    Plaintiff experienced direct retaliation for his protected conduct/activity while employed by the Defendants.

84.    On April 9, 2020, Mr. Alexander Monteverde, Environmental Health and Safety ("EHS") Manager, who, at all times relevant hereto, had supervisory authority, sent a chat to Plaintiff through the company's Microsoft Outlook program, stating, **"[W]ell you're a faggot so."**  After receiving the message, Plaintiff took a screenshot of the message.  Plaintiff did not respond to the message.  The message was subjectively and objectively offensive to Plaintiff and

to a reasonable person.  The message referring to Plaintiff as a "faggot" (hereinafter "faggot" or "f----t") is attached hereto as Exhibit "B."  The message attached hereto as Exhibit "B" constitutes direct and/or circumstantial evidence of discrimination against Plaintiff by the Defendants.

85.      After Plaintiff received the message from Mr. Monteverde referring to Plaintiff as a "f----t," attached as Exhibit "B" hereto, Plaintiff reported harassment to Don McBride, Chief Operating Officer, on or about April 9, 2020 or the following day, April 10, 2020.

86.      Mr. McBride did not take prompt and appropriate remedial action to prevent, correct, and remedy the harassment, which continued as a result.

87.      Plaintiff was subjected to direct retaliation by Defendants in the form of the below retaliatory actions, to wit:

88.      During Plaintiff's employment with Defendants, and after Plaintiff received the message on April 9, 2020, calling Plaintiff a "f----t," Plaintiff also recollects that his peers as well as management employees would frequently make comments such as "faggot" or "fag" (hereinafter "f-g").

89.      For example, John Michael Hester, Plant Superintendent, used the word, "f----t." Plaintiff recollects, for example, that Mr. Hester used the word, "f----t," after the date of April 9, 2020, which was when Mr. Monteverde used the word, "f----t."

90.      Mr. Hester used the word "f----t" multiple times to Plaintiff's recollection.

91.      Mr. Tom Dupras, Vice President of Disbursements, whom Plaintiff observed working with Mr. Hester, also used the word, "f----t," openly.

92.      Mr. Dupras also used the word "f-g" openly.

93.     The conduct from Mr. Monteverde, Mr. Hester, and Mr. Dupras set the example top-down at the company, such that Plaintiff recollects that multiple manufacturing plant workers also used the word, "f----t."

94.     In 2021, and to the best of Plaintiff's recollection, in or around Summer of 2021, Mr. Dupras, Vice President of Disbursements, was standing in a hallway outside of a restroom at the company, along with Mr. Bob Gray, Quality Control or Lab Manager, and Plaintiff, John Doe.  Mr. Dupras stated to the Plaintiff about Mr. Gray, "I saw him sucking your dick," or words to that effect.

95.     Plaintiff was terminated on February 24, 2022 on account of retaliation for his protected conduct or activity.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBT sensitivity training for any and all employees; to provide a neutral employment reference for Doe; and for Defendants to provide an apology to Doe.

**COUNT VII:**
**GENDER STEREOTYPING IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS**
**ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, John Doe v. Defendants, Heubach LTD; Heubach, Ltd., A NJ Limited**
**Partnership; and Heubach Color Technology Inc.)**

96.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

97.     Plaintiff was subjected to unlawful gender stereotyping by Defendants in violation of Title VII to wit:

98.     Plaintiff was perceived or assumed to be gay based on gender stereotypes.

99.     During Plaintiff's employment, Plaintiff was repeatedly questioned about whether or not he was married or had a girlfriend, meaning whether or not Plaintiff was associated with a partner of the opposite sex, female.  For example, Plaintiff recollects that he was questioned in this manner by Mr. Alexander Monteverde, Environmental Health and Safety ("EHS") Manager; Mr. Roman Yanush, Programmer; Mr. Shawn Ivone, manufacturing plant employee; and Mr. Mickey Shea, manufacturing plant employee.  Plaintiff recollects on one occasion that he responded, for example, that it was "none of your concern," or words to that effect.  Plaintiff was perceived or assumed to be gay by Defendants' employees, or that Plaintiff associated with members of the same sex, male.  However, Plaintiff is not gay.

100.     On April 9, 2020, Mr. Alexander Monteverde, Environmental Health and Safety ("EHS") Manager, who, at all times relevant hereto, had supervisory authority, sent a chat to Plaintiff through the company's Microsoft Outlook program, stating, **"[W]ell you're a faggot so."**  After receiving the message, Plaintiff took a screenshot of the message.  Plaintiff did not respond to the message.  The message was subjectively and objectively offensive to Plaintiff and to a reasonable person.  The message referring to Plaintiff as a "faggot" (hereinafter "faggot" or "f----t") is attached hereto as Exhibit "B."

23

101.    After Plaintiff received the message from Mr. Monteverde referring to Plaintiff as a "f----t," attached as Exhibit "B" hereto, Plaintiff reported harassment to Don McBride, Chief Operating Officer, on or about April 9, 2020 or the following day, April 10, 2020.

102.    Mr. McBride did not take action to address the unlawful gender stereotyping, which continued as a result.

103.    During Plaintiff's employment with Defendants, Plaintiff also recollects that his peers as well as management employees would frequently make comments such as "faggot" or "fag" (hereinafter "f-g").

104.    For example, John Michael Hester, Plant Superintendent, used the word, "f----t." Plaintiff recollects, for example, that Mr. Hester used the word, "f----t," after the date of April 9, 2020, which was when Mr. Monteverde used the word, "f----t."

105.    Mr. Hester used the word "f----t" multiple times to Plaintiff's recollection.

106.    Mr. Tom Dupras, Vice President of Disbursements, whom Plaintiff observed working with Mr. Hester, also used the word, "f----t," openly.

107.    Mr. Dupras also used the word "f-g" openly.

108.    The conduct from Mr. Monteverde, Mr. Hester, and Mr. Dupras set the example top-down at the company, such that Plaintiff recollects that multiple manufacturing plant workers also used the word, "f----t."

109.    In 2021, and to the best of Plaintiff's recollection, in or around Summer of 2021, Mr. Dupras, Vice President of Disbursements, was standing in a hallway outside of a restroom at the company, along with Mr. Bob Gray, Quality Control or Lab Manager, and Plaintiff, John Doe.  Mr. Dupras stated to the Plaintiff about Mr. Gray, "I saw him sucking your dick," or words to that effect.

110.     Plaintiff was unlawfully terminated on February 24, 2022 on account of gender stereotyping.

111.     Before the Supreme Court of the United States' decision in *Bostock v. Clayton County, Georgia*, *supra*., Consolidated Case No. 17-1618, 590 U.S. ____, 140 S. Ct. 1731, 2020 WL 3146686 (U.S. June 15, 2020), courts in the Eastern District of Pennsylvania have "recognized a wide variety of 'gender stereotyping' claims." *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 551 (E.D. Pa. 2017).

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBT sensitivity training for any and all employees; to provide a neutral employment reference for Doe; and for Defendants to provide an apology to Doe.

**COUNT VIII:**
**HARASSMENT/HOSTILE WORK ENVIRONMENT BASED ON PERCEIVED SEXUAL ORIENTATION IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION (NJ LAD), N.J.S.A. § 10:5-1, *et seq.***
**(Plaintiff, John Doe v. Defendants, Heubach LTD; Heubach, Ltd., A NJ Limited <u>Partnership; and Heubach Color Technology Inc.)</u>**

112.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

113.    Doe was subjected to a hostile work environment on account of his perceived sexual orientation in violation of the New Jersey Law Against Discrimination ("NJ LAD"), N.J.S.A. § 10:5-1, *et seq.*

114.    In support of this claim, Doe points to, for example, Rampersad v. Dow Jones & Company, No. 19-11733 (MAS) (TJB) (D.N.J. Jan. 31, 2020), among other cases, which would support the instant claim, to wit:

115.    Defendants are incorporated in the State of New Jersey as a limited partnership.

116.    At all relevant times, during Plaintiff's employment, Defendants were incorporated in the State of New Jersey as a limited partnership.

117.    Defendants' limited partnership certificate was filed in the State of New Jersey on March 1, 1988, and an amended limited partnership certificate was issued as recently as June 22, 2021, reflecting the same, that Defendants are a limited partnership in existence under the laws of the State of New Jersey.

118.    The formal title or official name of the company and by which it is known is "Heubach LTD, a NJ Limited Partnership."

119.    The first office established by Defendants was in the State of New Jersey.

120.    Plaintiff experienced a hostile and abusive atmosphere while employed with Defendants based on perceived sexual orientation in violation of the New Jersey Law Against Discrimination.

121.    Plaintiff was subject to being referred to by the slur, "f----t," during his employment.

122.    Plaintiff frequently heard the slurs, "f----t" and "f-g," used openly and conspicuously in the workplace, by management employees and by Plaintiff's colleagues.

123.    In 2021, and to the best of Plaintiff's recollection, in or around Summer of 2021, Mr. Dupras, Vice President of Disbursements, was standing in a hallway outside of a restroom at the company, along with Mr. Bob Gray, Quality Control or Lab Manager, and Plaintiff, John Doe.  Mr. Dupras stated to the Plaintiff about Mr. Gray, "I saw him sucking your dick," or words to that effect.

124.    Plaintiff was subjected to tangible employment action by being unlawfully terminated, on February 24, 2022, on account of perceived sexual orientation.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBT sensitivity training for any and all employees; to provide a neutral employment reference for Doe; and for Defendants to provide an apology to Doe.

### COUNT IX:
### WRONGFUL DISCHARGE/TERMINATION BASED ON SEXUAL ORIENTATION IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION (NJ LAD), N.J.S.A. § 10:5-1, *et seq.*
### (Plaintiff, John Doe v. Defendants, Heubach LTD; Heubach, Ltd., A NJ Limited Partnership; and Heubach Color Technology Inc.)

125.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

126.    Doe was wrongfully terminated on account of his perceived sexual orientation in violation of the New Jersey Law Against Discrimination ("NJ LAD"), N.J.S.A. § 10:5-1, *et seq.*

127.    Doe points to <u>Rampersad v. Dow Jones & Company</u>, No. 19-11733 (MAS) (TJB) (D.N.J. Jan. 31, 2020), among other cases, which would support the instant claim, to wit:

128.    Defendants are incorporated in the State of New Jersey as a limited partnership.

129.    At all relevant times, during Plaintiff's employment, Defendants were incorporated in the State of New Jersey as a limited partnership.

130.    Defendants' limited partnership certificate was filed in the State of New Jersey on March 1, 1988, and an amended limited partnership certificate was issued as recently as June 22, 2021, reflecting the same, that Defendants are a limited partnership in existence under the laws of the State of New Jersey.

131.    The formal title or official name of the company and by which it is known is "Heubach LTD, a NJ Limited Partnership."

132.    The first office established by Defendants was in the State of New Jersey.

133.    Plaintiff was unlawfully terminated on February 24, 2022 on account of perceived sexual orientation.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to conduct LGBT sensitivity training for any and all employees; to provide a neutral employment reference for Doe; and for Defendants to provide an apology to Doe.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

**FREUNDLICH & LITTMAN LLC**

DATED: 04/07/2023

BY: _____

**JUSTIN F. ROBINETTE, ESQUIRE**
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
Tel:  (215) 545-8500
Fax: (215) 545-8510
E-mail: Justin@FandLLaw.com

*Attorney for Plaintiff, John Doe*

## CERTIFICATE OF SERVICE

I, <u>JUSTIN F. ROBINETTE, ESQUIRE</u>, hereby certify that on this <u>7th</u> day of <u>April</u>, <u>2023</u>, or as soon thereafter as service can be effectuated, I caused to be served a true and correct copy of the foregoing document on the following persons, and via the method, set forth below:

### *VIA PERSONAL SERVICE/HAND DELIVERY AND ELECTRONIC MAIL*

Kimberly L. Russell, Esquire
Kaplin Stewart
1700 Market Street
Suite 1005
Philadelphia, PA, 19103
krussell@kaplaw.com

Respectfully submitted,

**FREUNDLICH & LITTMAN LLC**

DATED: <u>04/07/2023</u>          BY: _____

**JUSTIN F. ROBINETTE, ESQUIRE**
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
Tel:  (215) 545-8500
Fax: (215) 545-8510
E-mail: Justin@FandLLaw.com

*Attorney for Plaintiff, John Doe*

# EXHIBIT "A"



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 01/11/2023

To: ██████████████

WARWICK, PA 18974
Charge No: 530-2023-01813

EEOC Representative and phone:   Legal Unit Representative
Legal Unit
267-589-9707

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Karen McDonough
01/11/2023

Karen McDonough
Deputy District Director

**Cc:**

Please retain this notice for your records.

# EXHIBIT "B"

